81 So.2d 394

**Succession of Katie ROTH, widow of Frederick Franz (two cases).**

**In re Writs of Mandamus and Certiorari to the Judge of Division "B", Civil District Court, Parish of Orleans.**

No. 42276.

April 25, 1955.

Rehearing Denied May 23, 1955.

Piazza & Gulotta, Simon & Wicker, Curtis, Foster & Dillon, and Felix W. Gaudin, New Orleans, for relators.

Thomas Barr, III, New Orleans, for Thomas S. Buckley, Clerk of Court.

Prowell, Viosca & Reuter, J. V. Ferguson, II, New Orleans, for respondent.

FOURNET, Chief Justice.

The relators,[1] who are opposing the probate of the document offered by respondent Mark J. Falgoust as the last will and testament, olographic in form, of Mrs. Katie Roth Franz, deceased, on numerous alternative grounds—one of these being that if the Court should find the document to be the valid will of the decedent, then a certain paragraph thereof forms no part of the will because it was written at a later date, and is void as a codicil because not dated and signed by the testatrix—applied to this Court for writs of certiorari, prohibition and mandamus, contending that they would otherwise suffer immediate and irreparable injury and damage; and on their showing that certain recently-developed tests to determine the relative ages of the ink used in writing the disputed paragraph and the remainder of the will could be made by Dr. Paul L. Kirk only with the use of a machine developed by him and located in the laboratory of the University of California at Berkeley, but that the Court had denied their motion to send the will to California in custody of the Clerk of the District Court or his deputy, obtained an Order directed to the trial judge to grant the relief prayed for or to show cause why he would not do so, and to send the record here in order that the validity of the proceedings might be ascertained; and meanwhile all proceedings against the relators in the District Court were stayed and suspended.

The record shows that three experts testified concerning tests on the document to determine whether the disputed paragraph was written at a later date.[2] One of these, Dr. Paul L. Kirk, a professor of criminalistics at the University of California and also a private consultant in matters concerning analytical chemistry, testified in effect that he had made studies on the identification of liquid writing inks by electrophoretic examination; that such a test reveals differences in the components of ink of different ages, and that by lifting small samples of the ink used in writing the disputed paragraph and that used in writing the remainder of the document, it would be possible, by this method of

---

1. John W. Kleis, William Kleis, Thomas Kleis, Kate Burgwardt, and Laura O'Day Bowser, Testamentary Executrix of the Succession of Pauline Rath Denniston, plaintiffs (claiming as sole surviving legal heirs of decedent, Katie Roth Franz); August H. Grimaldi, Jr. and Eugene A. Grimaldi, Testamentary Executors of the Succession of August H. Grimaldi, Sr. and Felix W. Gaudin, some of the defendants and plaintiffs in reconvention, and third party plaintiffs; and Marjorie Grimaldi, wife of Ambrose Patrick Gootee, Eugene Grimaldi, August H. Grimaldi, Jr. and Ralph C. Grimaldi, some of the defendants, in the causes entitled "Succession of Katie Roth, widow of Frederick Franz," and "Succession of Mrs. Katie (Katy) Roth, widow of Fred Franz," consolidated, on the docket of the Civil District Court, Parish of Orleans, Division "B".

2. It is apparently not disputed that visual examination reveals a difference in the appearance of the ink in the contested paragraph and in the remainder of the document.

examination, to determine rather accurately the difference in age—if such a difference existed; that while some of the tests he proposed to make could be conducted in the courtroom, the most decisive test, in his opinion, involved the use of an electrophoretic apparatus which had been constructed at the laboratory of the University of California; that, to his knowledge, such apparatus did not exist in this State, and not only was it a rather large thing to transport but would require too much auxiliary apparatus and too many special facilities to permit the test to be run under courtroom conditions. There followed the relator's motion to have the document transported to the University of California in Berkeley, and delivered to Dr. Kirk for tests and analyses, whereupon the trial judge stated he was "very reluctant to accept responsibility" of permitting the document to be removed from the jurisdiction of the court, and fixed a hearing on the motion. At that hearing respondent Falgoust (who is made universal legatee under the provisions of the disputed paragraph), offered the testimony of Linton Godown, of Memphis, Tennessee, who stated he was an examiner of questioned documents, had done extensive experiments in differentiating and breaking down the component parts of ink, and that the tests proposed by Dr. Kirk could be easily carried on in the courtroom on equipment similar to that described by Dr. Kirk as being in the laboratory in California.

The trial judge, in denying relators' motion, stated that he did not believe it was necessary to send the document to California; he concluded that it was more convenient to ship the equipment to New Orleans than to send a deputy of the Court to California, and again refused "to accept responsibility for the removal of the will from its [the Court's] jurisdiction." Upon application of relators, writs issued as stated above.

In his return to the rule issued in this case the respondent trial judge transmitted the record and submitted the matter, referring to his reasons for judgment and attaching a copy of the Rules of his Court; while the respondent Mark J. Falgoust in his answer claims (1) that the Rules of the Civil District Court forbid the withdrawal of documents except upon consent of all parties,[3] and further (2) that the required equipment for paper electrophoresis can be purchased on the open market and, although at the time the motion was made to send the will to California he was ignorant of the fact, actually such machines are presently within the jurisdiction of the District Court. In this he is supported by two affidavits attached to his return.[4]

---

3. Rule XX, Section 6, provides, in pertinent part: "With the consent of all parties the Court may permit the withdrawal of any document or exhibit on the leaving of a receipt therefor. * * *"

4. One of these affidavits is signed by Dr. Harold Baer, Assistant Professor of Micro-Biology at Tulane University, New Orleans; the other, by Dr. Fred G. Brazda, Professor and Head of Bio-

■ The section of the Rules of the Civil District Court, Parish of Orleans, relied on by the respondent and appearing under the heading, Withdrawal of Records, Rule XX, is not controlling here. While under the provisions of Section 6 of that Rule, the withdrawal "of any document" may be permitted by the trial judge, with the consent of all the parties, "on the leaving of a receipt therefor," this provision was obviously included so as to facilitate the withdrawal of documents for the purpose of examination, photostating, comparison, and the like, by the parties interested in the trial of a cause—though not specifically limited to interested parties—and was never intended to restrict the trial judge in the exercise of his wise discretion whenever the exigencies of the case might require otherwise. The sending of documents to laboratories both within and without the jurisdiction of the court, for certain specified tests, is a common daily occurrence.

■ Whether a document such as the one under attack here should be removed from the record, to be sent to a laboratory either within the jurisdiction of the court or outside of such jurisdiction, is a matter that rests within the sound discretion of the trial judge, and his ruling in that respect will not be disturbed unless shown to be arbitrary and capricious, and then only if the test is found to be necessary for a determination of the cause or in the interests of justice.

■ It would appear from the testimony of experts that the electrophoresis test, as indicated in the testimony of Dr. Kirk, is very material to a final and proper determination of the issue involved, i. e., to show whether the disputed paragraph was written at a different time from the date on which the will was written, dated and signed; however, if it be true that the needed apparatus to conduct these experiments is within the jurisdiction of and available to the Court, as indicated by the affidavits annexed to respondent Falgoust's return, the document in question should not be sent out of the court's jurisdiction. But in as much as we cannot consider these ex parte affidavits on certiorari here, we think the interests of justice would be served by remanding the case to establish this proof.

■ Incorporated in the appearance of certain other respondents in writ,[5] who join Falgoust in his opposition, is a so-called "Cross-Application" in which those respondents, averring that they are legatees

chemistry in Louisiana State University School of Medicine, New Orleans. Both affidavits state, in substance, that equipment known as Paper Electrophoresis, of a specified make and manufacture, is in the possession of each University and is available to the Civil District Court, Orleans Parish, for use in paper elec-

trophoresis analysis provided the said analysis be conducted by a duly qualified person.

5. Mrs. Evelyn Belmont, Messrs. George Brown, August Giroir and Frank Seymore.

under the last will and testament of decedent, and that there are sufficient assets on hand to pay them their legacies, which amount to only $4,100, ask that we use our supervisory jurisdiction to pass upon the right of the trial judge to order at this time the probate of the document in question. Suffice to say that such a request does not presently merit serious consideration.

For the reasons assigned, the case is remanded to the lower court for further proceedings according to law and not inconsistent with the views herein expressed.